# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD BAEZ and ANTOINETTE GRAYS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-11235 |
| MONSTER, INC., a California corporation, E & S INTERNATIONAL ENTERPRISES, INC., a/k/a ESI ENTERPRISES, INC., a California corporation, | ) ) ) ) | |
| Defendants. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED CLASS ACTION COMPLAINT OF DEFENDANT E & S INTERNATIONAL ENTERPRISES, INC.

NOW COMES Defendant, E & S INTERNATIONAL ENTERPISES, INC. ("ESI"), and for its Answer and Affirmative Defense to Plaintiffs' First Amended Class Action Complaint, and states:

### NATURE OF THE ACTION

1.      Defendants are responsible for manufacturing, distributing, and selling "M7" tablet computers. Unfortunately, these M7s suffer from notorious charging port defects that make them substantially certain to fail prematurely. Defendants also misrepresented the technical specifications of M7s, leaving customers with a fraction of the storage space and camera resolution they paid for. Defendants fail to correct these defects, despite thousands of complaints.

**ANSWER: Defendant ESI admits only that it distributed and sold "M7" tablet computers. Defendant ESI denies the remaining allegations contained in Paragraph 1 of Plaintiffs' First Amended Class Action Complaint.**

2.     Plaintiff Baez purchased two M7s as Christmas gifts, relying on the technical specifications and on Monster's strong brand name. Both M7s suffered immediate problems with freezing up, shutting down, and running out of memory. Within six months, one lost its charging port completely, and the other could only capture a limited charge. Plaintiff Baez sought timely warranty service, but Defendants did little more than provide faulty updates and hold one M7 for six months. Defendants even attempted to charge him to "repair" their own well-known defects.

**ANSWER: Defendant ESI denies the allegations that they "did little more than provide faulty updates and hold one M7 for six months." Defendant ESI denies the allegations that they "even attempted to charge him to 'repair' their own well-known defects." Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 2 of Plaintiffs' First Amended Class Action Complaint.**

3.     Plaintiff Grays purchased two M7 tablets based on the product warranties, representations, and strong brand name of Defendant Monster. Neither functioned as advertised, and both quickly ceased operating altogether due to the notorious charging port defects. The first M7 failed within a month of light use, quickly enough to be returned to the store. The second survived about six months, so she had to ship it, at her own expense, to Defendants' warranty servicer, which did little more than hold it in "initial testing" *for over a year*.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of Plaintiffs' First Amended Class Action Complaint.**

4.     Plaintiffs' experiences are not uncommon:



**Figure 1** (Illustrative snapshot, in raw date order (*i.e.*, not sorted by "Stars"); the majority of M7 reviews on "Amazon.com" similarly complain of the same charging port defects.)

**ANSWER: Defendant ESI states that, to the extent Plaintiffs purport to present an "illustrative snapshot" of a website, the actual website is the best evidence of its contents and defendant denies the allegations contained in paragraph 4 to the extent they do not fully or accurately reflect the contents of the website described. Defendant ESI denies the remaining allegations contained in Paragraph 4 of Plaintiffs' First Amended Class Action Complaint.**

5.    The M7 charging port defects are substantially certain to cause premature and total device failure, yet Defendants refuse to acknowledge, fix, or even warn consumers about

this problem, leaving thousands with broken and worthless tables. Moreover, Defendants' product misrepresentations deceive customers, and any M7s that have not yet failed still function well below their advertised capabilities. Accordingly, M7 purchasers have not received fair value for their money, and now bring this putative class action for appropriate damages and restitution.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 5 of Plaintiffs' First Amended Class Action Complaint.**

## PARTIES

6.      Plaintiff Edward Baez is a natural person, a citizen of the State of Illinois, and a resident of Cook County, Illinois.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 6 of Plaintiffs' First Amended Class Action Complaint, and on that basis denies them.**

7.      Plaintiff Antonette Grays is a natural person and citizen of the State of California.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 7 of Plaintiffs' First Amended Class Action Complaint, and on that basis denies them.**

8.      Defendant Monster, Inc., is a corporation organized and existing under the laws of the State of California with its principal place of business located at 455 Valley Drive, Brisbane, California 94005. Monster does business throughout the United States and the State of Illinois, including in this District.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 8 of Plaintiffs' First Amended Class Action Complaint.**

9.     Defendant E & S International Enterprises, Inc., is a corporation organized and existing under the laws of the State of California with its principal place of business located at 7801 Hayvenhurst Avenue, Van Nuys, California 91406. ESI does business throughout the United States and the State of Illinois, including in this District.

**ANSWER: Defendant ESI admits that Defendant E & S International Enterprises, Inc., is a corporation organized and existing under the laws of the State of California with its principal place of business located at 7801 Hayvenhurst Avenue, Van Nuys, California 91406, and that it sells products to various retailers located in the United States, including at least one retailer located in the State of Illinois and this District. Defendant ESI denies the remaining allegations contained in Paragraph 9 of Plaintiffs' First Amended Class Action Complaint.**

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209(b)(4) and venue is proper because Defendants are corporations that conduct business in this State and because Plaintiff Baez resides in this District and purchased his M7 tablets here.

**ANSWER: Defendant ESI admits only that the Court has jurisdiction over this action and that it sells products to at least one retailer located in the State of Illinois. Defendant ESI denies that it conducts business in the state of Illinois. Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph.**

## FACTUAL BACKGROUND

## I.     An Overview of Monster's Business.

11.    Monster is one of the country's largest producers of premium consumer electronics. Best known for its "top-of-the-market" audio and visual cables, it manufactures, distributes, and sells over 5,000 different premium electronic products under the slogan, "Get All The Performance You Paid For." Monster claims to be the "world's leading manufacturer of advanced connectivity solutions for high-performance home entertainment, audio, home cinema, computer and gaming as well as a leading innovator in the field of mobile accessories and professional audio." It claims "the name Monster Cable is so synonymous with high quality and high performance, customers often assume that any cable they purchase in reputable stores would be Monster even though there are other cable brands."

**ANSWER:    Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 11 of Plaintiffs' First Amended Class Action Complaint.**

12.    Monster is well-known for charging premium prices and promising premium performance for its products. For example, Monster manufactures High-Definition Multimedia Interface ("HDMI") cables. Because HDMI technology is based on a proprietary standard, there is very little functional difference between one HDMI cable and the next. *See*, *e.g.*, *Why All HDMI Cables Are The Same* (c|net 2012)[1] (concluding that "Expensive HDMI cables . . . offer no difference in picture quality over cheap ones.") Nonetheless, Monster claims that its HDMI

---

[1] Available at http://www.cnet.com/news/why-all-hdmi-cables-are-the-same (last accessed December 21, 2015); *see also* Consumerist, *Do Coat Hangers Sounds As Good As Monster Cables?*, available at http://consumerist.com/2008/03/03/do-coat-hangers-sound-as-good-monster-cables (last accessed December 21, 2015).

cables are superior, and charges accordingly.[2] *See*, *e.g.*, Figure 2, below.



**Figure 2** (example of Monster's premium pricing.)

**ANSWER:    Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 12 of Plaintiffs' First Amended Class Action Complaint.**

13.     As a general matter, Monster actively fosters the perception that it provides premium, top-quality consumer electronic products. It leverages its premium brand name to market over 5,000 different products, at all times promising to be "firmly committed to providing [its] customers with best in class, reliable products."[3] Among these products is its flagship tablet computer, the M7.

**ANSWER:    Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of Plaintiffs' First Amended Class Action Complaint.**

14.     Unfortunately for consumers, and despite Defendants' advertisements, the M7

---

[2] Listed retail prices for basic six-foot HDMI cables on "Walmart.com," with Monster's "Essentials" being one of the priciest. Also showing Monster's four-foot "Platinum" HDMI cable at up to 17 times the price of equivalently-functioning six-foot HDMI cables.

[3] Monster, *Warranty FAQ*, available at https://www.monsterproducts.com/support/warranty (last accessed December 29, 2015).

does not live up to Monster's reputation or quality representations. *See*, *e.g.*, Tom's Hardware (noting "Consumer Reports is calling this tablet a 'Don't Buy,' which is a shame given that Monster is known for its high-end audio products; you expect the same quality with its new tablet line.")[4]

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 14 of Plaintiffs' First Amended Class Action Complaint.**

## II.     The M7: As Produced and Advertised.

15.     At some point in 2012 or 2013, Defendants Monster and ESI partnered to design, manufacture, and sell the "M7," a Monster-branded tablet computer.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 15 of Plaintiffs' First Amended Class Action Complaint. Answering further, Defendant ESI states that, in 2012, Defendant ESI purchased a license from Defendant Monster to design and sell the "M7" as a Monster-branded tablet computer.**

16.     On information and belief, pursuant to this collaboration, ESI agreed to license various trademarks from Monster and to develop, manufacture, distribute, advertise, and sell M7s, subject to Monster's continuous oversight, approval, and control.

**ANSWER: Defendant ESI admits only that ESI agreed to purchase a license from Monster allowing it to use a Monster-owned trademark in connection with the M7 tablet. Defendant ESI denies the remaining allegations contained in Paragraph 16 of Plaintiffs' First Amended Class Action Complaint.**

17.     Together, on September 18, 2013, Defendants issued a press release stating that "Monster, the world leader in high-performance personal audio, connectivity solutions and

---

[4] Tom's Hardware, *Consumer Reports Monster M7 Tablet*, available at http://www. tomshardware.com/news/consumer-reports-monster-tablet-m7,25016.html (last accessed January 6, 2016).

headphones, . . . announced the launch of its first line of tablets—the Monster M7."[5] M7s were made available for purchase exclusively through Wal-Mart, walmart.com, and Sam's Club.

**ANSWER: Defendant ESI admits only that it issued a press release on September 18, 2013, with Monster's consent, and that M7s were exclusively sold to consumers through Wal-Mart and related entities. To the extent this Paragraph seeks to characterize the contents of that press release, the press release itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced press release. Defendant ESI denies any remaining allegations contained in Paragraph 17 of Plaintiffs' First Amended Class Action Complaint.**

18.    Defendants claimed, in Monster's name, that they had "engineered the finest in mobile computing" with the M7, which purportedly exemplified the "quality craftsmanship that [consumers] have come to expect from Monster."[6]

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a website, the website itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced website.**

19.    Defendants further represented that the M7 was a "premium tablet," "fully loaded with features" and "packed with all the latest specs," including a "Micro USB input," a "rear (5.0MP) camera," and "16GB storage."

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a website or other writings, the website or writings themselves**

---

[5] Monster, *Monster Launches First Line of Tablets*, available at http://www.enhanced onlinenews.com/news/eon/20130918005559/en/Tablets/Headphones/Walmart (last accessed December 29, 2015).
[6] ESI, *Homepage: My Monster Tablet*, available at http://mymonstertablet.com (last accessed December 29, 2015)

are the best evidence of their contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced website or writings.

20.     Defendants additionally represented that M7s have power cords and charging ports that comply with "Micro USB" specifications (which, in turn, specify a minimum rated lifetime of 10,000 cycles of insertion and removal between the connector and port).

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a website or other writings, the website or writings themselves are the best evidence of their contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced website or writings.**

21.     Defendants also represented that M7s can be "use[d]" and "enjoy[ed]," both through the one-year warranty period and potentially for "many years." *Id.*

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a website or other writings, the website or writings themselves are the best evidence of their contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced website or writings.**

22.     Defendants include these representations on and within the M7 product packaging. *See* Figures 3-4, below.

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of the M7 product packaging, the packaging itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced packaging.**




**Figures 3-4** (showing product representations included with M7 packages).

23. Moreover, Defendants represented that M7s are functioning tablet computers. To be a tablet computer, a product must have a touchscreen display, circuitry, and battery combined in a single, portable device. Defendants expressly represented that their M7 tablets were portable and contained batteries that "will be charged" when a tablet user "connect[s] the supplied DC Charger to the 'Micro USB/Charger Interface' port on the tablet and the AC outlet on the wall."[7] *See* Figure 5, below.



**Figure 5** (charging instructions).

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of the instructions provided with the M7, the instructions**

---

[7] Defendants, *Quick Start Guide: M7 Tablet*, included with product purchase.

themselves are the best evidence of their contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced instructions.

### III. The M7: As Delivered, with Critical Design and Manufacturing Defects.

24.     M7s, as designed and manufactured, suffer from defects and do not conform to Defendants' express or implied warranty representations. Specifically, M7s do not conform to "Micro USB" specifications, and these failures predictably cause the charger ports to dislodge, rendering the tablets inoperable and unfit for their intended use. M7s also do not meet advertised technical specifications, such as having 5.0MP cameras or 16GB of available storage, and further suffer from a host of software problems that routinely render them inoperable. Defendants, while aware of these defects, have failed to provide full refunds or adequate warranty repairs.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 24 of Plaintiffs' First Amended Class Action Complaint.**

### A.     M7 charger cables do not meet "critical" Micro USB specifications.

25.     A typical charger cable contains two ends, one of which connects to a device. This connecting end, typically called a "plug" or "connector," is designed to be inserted into a "receptacle" or "port" on the device itself. Typically, connectors and/or ports have mechanisms for actively or passively staying attached to each other, such as magnets or latching blades.

**ANSWER: Defendant ESI  admits the allegations contained in paragraph 25 of Plaintiffs' First Amended Class Action Complaint.**

26.     Under Micro USB specifications, connectors use passive latching blades to stay attached to Micro USB ports. These blades must be built to specified dimensions to avoid

product wear and/or failure. In March of 2010—three years before the first M7 was produced—the USB Implementers Forum set the maximum height for Micro USB latching blades at 0.6 millimeters, precisely because "the variation in design of the passive latching feature has led to combinations with excessive extraction forces, resulting in customer dissatisfaction and the potential for device failures (broken cables or peeled off receptacles)."[8] The Forum cautioned that "[i]t is fairly critical to proper operation that the plug's latch feature be designed as described by the new reference dimensions." *Id*.

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a third-party publication, the publication itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced publication.**

27.     Nonetheless, M7 charger cables have latching blades that exceed the Micro USB maximum height specifications as well as industry averages. *See* Figures 6-8, below. *Id*.



**Figure 6** (Micro USB specifications, showing max latch height of .6mm).



**Figure 7** (M7 connector, with latch height of .646mm).

---

[8] USB Implementers Forum, *Maximum Un-mating force value definition to micro connector USB 2.0*, Engineering Change Notice (March 23, 2010).



**Figure 8** (M7 latch height is the tallest of a random sampling of brands).

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 27 of Plaintiffs' First Amended Class Action Complaint.**

28.     Defendants' failure to follow Micro USB latch-height specifications causes the very problem these specifications were designed to prevent: "peeled-off receptacles," resulting in "device failures."

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 28 of Plaintiffs' First Amended Class Action Complaint.**

29.     Specifically, each M7 comes with a Micro USB charging port that connects to the battery through a printed circuit board. *See* Figure 9, below. This connection is what allows an electric current to flow from the port to the battery, enabling the device to charge.



**Figure 9** (showing a Micro USB charger interface port attached to a circuit board).

**ANSWER: Defendant ESI admits the allegations contained in Paragraph 29 of**

**Plaintiffs' First Amended Class Action Complaint.**

30.     Because M7 connector blades are too tall, excessive extraction forces occur during normal use. Predictably, these forces cause the charging ports to routinely peel off of the circuit boards, severing the connection between the ports and the batteries and rendering the M7s unable to charge.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 30 of Plaintiffs' First Amended Class Action Complaint.**

31.     These latching blade defects are compounded by design and/or manufacturing weaknesses in the ports themselves.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 31 of Plaintiffs' First Amended Class Action Complaint.**

**B.      M7 charger ports are defectively designed and manufactured.**

32.     M7 charger ports suffer from a number of design and/or manufacturing faults that, collectively, cause a substantial increase the risk of port breakage during normal use. When coupled with Defendants' defective latching blade connectors, these additional port defects virtually ensure premature device failure.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 32 of Plaintiffs' First Amended Class Action Complaint.**

33.     First, M7 charger ports are improperly oriented, in violation of USB standards. Specifically, all USB cords come with USB Icons embossed on the topsides of the connector plugs. Among other things, these embossed icons let consumers intuitively see and feel the proper connector plug orientation, and thus serve to "facilitate alignment during the mating

process."[9] *See, e.g.,* Figure 10, below (showing embossed icons on connector tops).

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 33 of Plaintiffs' First Amended Class Action Complaint.**

34.     To make use of this common-sense feature, USB standards state that ports "should be oriented to allow the Icon on the plug to be visible during the mating process." *Id*. Nonetheless, in M7s, the USB charger ports are oriented in reverse, such that the power cords must be inserted upside-down (with the USB icons facing away from the consumers). *C.f.* Figures 10-11, below.



**Figure 10** (properly-oriented Micro USB ports, with narrow ends oriented upwards).[10]



**Figure 11** (M7 Micro USB port, with narrow end oriented downwards

**ANSWER: Defendant ESI admits only that the USB charger port on the M7 is oriented such that a standard USB cord inserted by a consumer holding the tablet in the manner displayed in figure 12 of the First Amended Class Action Complaint would have a USB icon facing away from that consumer. Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a third-party publication M7, the publication itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced**

---

[9] Universal Serial Bus Specification Revision 2.0, Section 6.5.1 (April 27, 2000).

[10] Global Connector Technology, USB Mount Image, available at http://gct.co/ gctconnexion/microUsb/images/Reverse-Type-USB.jpg (last accessed January 6, 2016).

**publication. Defendant ESI denies the remaining allegations contained in Paragraph 34 of Plaintiffs' First Amended Class Action Complaint.**

35.     Consumers generally expect the USB icons on their charger cables to be oriented upwards. By doing the opposite of what consumers expect, Defendants invite them to routinely attempt upside-down insertions, thus multiplying the mechanical stress exerted upon the charging ports themselves.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 35 of Plaintiffs' First Amended Class Action Complaint.**

36.     Moreover, because consumers do not operate tablets on a level plane, Defendants' reverse USB orientation changes the angle at which connectors are typically inserted into the M7 charger ports.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 36 of Plaintiffs' First Amended Class Action Complaint.**

37.     Specifically, consumers tend to hold and use tablets at slight angles, such as that shown in <u>Figure 12,</u> below.



**Figure 12** (normal angle for tablet use).[11]

---

[11] Pixabay, *Stock Photographs: Person Reading Tablet*, available at https://pixabay.com/en/ tablet-computer-woman-reading-690032 (last accessed January 6, 2016).

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 37 of Plaintiffs' First Amended Class Action Complaint.**

38.     This typical user angle multiplies the problems inherent to Defendants' reverse port orientation. With a standard Micro USB orientation, the latching blades on the connectors are pulled away from the ports when inserted or extracted at the typical user angle. With the reverse orientation featured by M7s, however, the opposite occurs, whereby the latching blades are pushed *into* the port, reducing exit space and increasing the mechanical strain imposed on the ports themselves. *See* Figure 13, below.



**Figure 13** (illustration showing how, under typical use, a standard orientation can relieve mechanical stress, whereas the M7's reverse orientation can increase mechanical stress) (angles and dimensions exaggerated for illustrative purposes).

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 38 of Plaintiffs' First Amended Class Action Complaint.**

39.     Additionally, the casing for M7s was not designed to provide adequate relief against mechanical strain. Micro USB ports are designed to reside inside tight enclosures (*e.g.*, cellphone cases) that are typically structured to help hold the ports in place and relieve mechanical strain. In M7s, however, there are air gaps directly above the charging ports, instead of supportive casing. Additionally, Defendants use a recessed design for their Micro USB ports, whereby they

are pushed fully inside of the casing (and are thus unable to use any support the casing could otherwise provide). Accordingly, the charger ports are forced to bear the full brunt of vertical mechanical strain during insertion and extraction cycles, without assistance from the enclosure itself. *See* Figure 14, below.



**Figure 14** (showing recessed port design and location of internal air gap.)

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 39 of Plaintiffs' First Amended Class Action Complaint.**

40.    Moreover, within each M7, the narrow (downward) side of the Micro USB port is the end attached to the printed circuit board. Thus, and again due to the upside-down orientation, the oversized latching blades function to pull the ports up and away from the circuit boards, as opposed to pushing the ports into the boards themselves in a manner that could relieve some of the mechanical strain.

**ANSWER: Defendant ESI admits only that the narrow side of the Micro USB port within each M7 tablet is the end attached to the printed circuit board. ESI denies the remaining allegations contained in Paragraph 40 of Plaintiffs' First Amended Class Action Complaint.**

41.    Additionally, and despite the aforementioned weaknesses, the charging ports themselves are only secured to the circuit boards using two soldered contacts, as opposed to four. *C.f.* Figures 15-16, below.



**Figure 15** (M7 port, attached with only two soldered contacts.)   **Figure 16** (Comparison Micro USB port, attached with four soldered contacts.)

**ANSWER: Defendant ESI admits only that some M7 tablets contain a charging port that is secured to the circuit board using two soldering contacts. ESI denies the remaining allegations contained in Paragraph 41 of Plaintiffs' First Amended Class Action Complaint.**

42.    Collectively, the above-described port defects, along with other weaknesses, cause M7 ports to routinely fail. Many consumers have complained about receiving M7s with ports broken on arrival, before first use. Predictably, these weak port problems are compounded by the use of defective and oversized Micro USB cables. As a result, M7s routinely and predictably fail, by the thousands, and are substantially certain to do so, as reflected through Plaintiffs' own experiences and through legions of online complaints.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 42 of Plaintiffs' First Amended Class Action Complaint.**

43.    Moreover, even before failure, M7s do not operate as advertised, as explained further below.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 43 of Plaintiffs' First Amended Class Action Complaint.**

    **C.    M7s do not conform to their stated technical specifications.**

44.    Defendants misrepresent the features and capabilities of M7s, artificially increasing their perceived value and causing consumers to pay more than they otherwise would. For instance, Defendants claim that M7s take five megapixel ("MP") pictures, when in fact they only take 3.1MP pictures out of the box. Similarly, Defendants advertise that M7s come with sixteen gigabytes ("GB") of available storage, when in fact they have less than 1GB generally available for most user applications under ordinary use. Additionally, M7s come with built-in firmware defects that routinely cause the tablets to "freeze" and become unusable.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 44 of Plaintiffs' First Amended Class Action Complaint.**

    **i.    M7s do not take 5.0MP pictures.**

45.    A megapixel, meaning one million pixels, is a technical specification for measuring how much detail an image will have. Megapixels are perhaps the most well-known and prominently advertised "on-the-box" technical specifications for digital camera products.

**ANSWER: Defendant ESI admits that a megapixel is a technical specifications for measuring the detail of an image. Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 45 of Plaintiffs' First Amended Class Action Complaint.**

46.    As with other prominent "on-the-box" specifications, megapixel ratings give consumers an easy way to compare products. Consumers view products that produce 5.0MP pictures as being of higher quality and of more value than otherwise-equivalent products that

only produce 3.1MP pictures.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 46 of Plaintiffs' First Amended Class Action Complaint.**

47.    Moreover, as with other prominent "on-the-box" technical specifications, megapixel specifications create a "spillover" impression on overall product quality, in that consumers see higher megapixel specifications as a signal that a product contains higher-quality materials and components overall. Accordingly, consumers will pay more for higher megapixel-rated consumer electronics products than for lower-rated ones, even if they do not intend to use such products for photography.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 47 of Plaintiffs' First Amended Class Action Complaint.**

48.    Defendants, as experienced consumer electronics companies, know that their target consumers will pay more for products that produce higher-megapixel photographs, and as a result have prominently advertised—online, in their press releases, and on their product packaging—that their M7 tablets come with 5.0MP rear-facing cameras.

**ANSWER: Defendant ESI admits only that advertisements for the M7 tablet stated that the tablet was equipped with a 5.0MP rear-facing camera. Defendant ESI denies the remaining allegations contained in Paragraph 48 of Plaintiffs' First Amended Class Action Complaint.**

49.    Contrary to these express representations, however, M7s do not produce 5.0MP pictures out of the box. Rather, M7s come with two camera applications preinstalled, both of

which only allow for a maximum picture resolution of 3.1MP (*i.e.*, approximately 60% of what Defendants expressly warrant).

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 49 of Plaintiffs' First Amended Class Action Complaint.**

50.     Specifically, the preinstalled stock application for photographs—called the "Camera" application—lets users select the megapixels setting for the rear-facing camera. The highest available setting is 3MP. There is no 5.0MP option available. *See* Figure 17, below.



**Figure 17** (showing "3M" as the max resolution for the stock "Camera" application).

**ANSWER:     Defendant ESI admits that a "Camera" application was installed on M7 tablets before they were distributed and that users of that application may select from multiple megapixel settings for the rear-facing camera. Defendant ESI denies the remaining allegations contained in Paragraph 50 of Plaintiffs' First Amended Class Action Complaint.**

51.     Pictures taken with this "Camera" application at its highest resolution setting actually result in 3.1MP pictures (specifically, 1526x2048 pixels, amounting to 3,145,728 total pixels). No available setting actually produces 5.0 MP pictures.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 51 of Plaintiffs' First Amended Class Action Complaint.**

52.     Similarly, the preinstalled "Camera MX" application also lets users select the megapixels setting for the rear-facing camera. The available options range from 1-4MP. There is no 5.0MP option available. *See* Figure 18, below.



**Figure 18** (showing "4 MP" as the max resolution for the "Camera MX" application).

**ANSWER:     Defendant ESI admits that a "Camera MX" application was installed on M7 tablets before they were distributed and that users of that application may select from multiple megapixel settings for the rear-facing camera. Defendant ESI denies the remaining allegations contained in Paragraph 50 of Plaintiffs' First Amended Class Action Complaint.**

53.     However, pictures taken with the "Camera MX" application, even at its highest "4 MP" setting, only result in 3.1MP pictures, the same as with the stock "Camera" application (again, 1526x2048 pixels, amounting to 3,145,728 total pixels). No available settings produce 5.0MP pictures.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 53 of Plaintiffs' First Amended Class Action Complaint.**

54.      In short, M7s do not come with applications or settings that allow users to take pictures with a resolution greater than 3.1MP, much less the 5.0MP that Defendants expressly warrant.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 55 of Plaintiffs' First Amended Class Action Complaint.**

**M7s do not come with 16GB of available storage.**

55.     A gigabyte, meaning one billion bytes, is a technical specification for measuring data storage. As with megapixels, gigabytes are among the most well-known and prominently advertised "on-the-box" technical specifications that consumers consider when purchasing electronic products.

**ANSWER: Defendant ESI admits that a gigapixel is a technical specifications for measuring data storage. Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 55 of Plaintiffs' First Amended Class Action Complaint.**

56.     Gigabyte specifications let consumers easily compare products, and are considered especially important for small portable devices like tablet computers. Consumers heavily consider gigabyte specifications when making purchasing decisions, and perceive products that offer 16GB of available storage as being of higher quality and of more value than otherwise-equivalent products that offer less storage.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 56 of Plaintiffs' First Amended Class Action Complaint.**

57.     Moreover, as with megapixels, gigabyte specifications create a "spillover" impression on overall product quality, in that consumers perceive higher gigabyte specifications as a signal that a product generally contains higher-quality materials and components overall. Accordingly, consumers will pay more for higher gigabyte-rated consumer electronics products than for lower-rated ones, even if they do not intend to use all of the storage available.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth**

**or falsity of the allegations contained in Paragraph 57 of Plaintiffs' First Amended Class Action Complaint.**

58.    Defendants, as experienced consumer electronics companies, know that their target consumers will pay more for products with more storage, and as a result they have prominently advertised—online, in their press releases, and on both the front and back of their product packaging—that their M7 tablets come with 16GB of available storage.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 58 of Plaintiffs' First Amended Class Action Complaint.**

59.    Nonetheless, M7s actually come with 13.26GB of available storage, not the 16GB as advertised. Worse, ESI, under Monster's supervision and control, programmed M7s to "partition" this storage in ways that materially limit its general use. Specifically, instead of having a single internal storage partition for applications and data, there are two: an "Internal Storage" partition, with 0.98GB of storage available, and a "NAND Flash" partition, with 12.28GB available.

**ANSWER: Defendant ESI admits only that M7 tablets are distributed with 13.26 GB of available storage, with 0.98 GB of available storage on one partition and 12.28 GB of available storage on a second partition. Defendant ESI denies that it has advertised that the M7 tablet was sold with 16GB of available storage, and further denies that the partitions described by Plaintiffs materially limit general use of the M7. Defendant ESI denies any remaining allegations contained in Paragraph 59 of Plaintiffs' First Amended Class Action Complaint.**

60.    By default, and due to Defendants' programming choices, most applications are preloaded and downloaded into this smaller, 0.98GB Internal Storage partition. Indeed, the vast

bulk of preloaded (and often unmovable) applications come stored in the already-limited 0.98GB

Internal Storage space (with over half already used up at the time of sale), while most user-

downloaded applications are also funneled into this same, limited space, by default.

Consequently, the 0.98GB Internal Storage partition quickly runs out of space during normal use,

while the 12.28GB NAND Flash partition remains largely idle.

**ANSWER: Defendant ESI admits only that the default settings of the M7 tablet**

**provide for applications to be stored in the Internal Storage space. Defendant ESI denies**

**the remaining allegations contained in Paragraph 60 of Plaintiffs' First Amended Class**

**Action Complaint.**

61. Accordingly, consumers have relied heavily on Defendants' advertised 16GB

storage capabilities, only to find that their M7s come equipped with 13.26GB of total stated

storage and less than 1GB of storage actually available for ordinary use, with most of this 1GB

already occupied by preinstalled applications. *See*, *e.g.*, Figure 19, below (showing an actual

screenshot of an M7's storage data, where *60 times* as much application data has been allocated

to the smaller 0.98GB Internal Storage partition, as opposed to the larger 12.28 GB NAND Flash

partition).



**Figure 19**.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 61 of Plaintiffs' First Amended Class Action Complaint.**

62.     Predictably, and as a direct result of Defendants' programming choices, consumers end up with far less available storage available than expected, and are frequently left disappointed with their M7 purchases. *See* <u>Figures 20-22,</u> below.



**Figure 20** (storage complaint).




**Figure 21** (same).　　　　　　　**Figure 22** (same).

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 62 of Plaintiffs' First Amended Class Action Complaint.**

63.　　　There is no way to actually access the 16GB of available storage that Defendants advertise, and without sophisticated alterations most consumers are left limited to less than 1GB of actual usable storage for all of their applications and application data.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 63 of Plaintiffs' First Amended Class Action Complaint.**

### iii.　　M7s routinely "freeze" on users.

64.　　　At the least, Defendants' copious quality representations imply that their M7 tablets will serve as actual, operational computer tablets, such that consumers will be able to actively make use of them under normal conditions.

**ANSWER: Defendant ESI is unable to form a belief as to the truth or falsity of the allegations contained in paragraph 64 of Plaintiffs' First Amended Class Action Complaint**

due to the ambiguity of its terms. **In the event any additional answer is required, Defendant ESI denies the allegations contained in Paragraph 64 of Plaintiffs' First Amended Class Action Complaint.**

65.     Nonetheless, in 2013, Consumer Reports gave the M7 a "Don't Buy" rating, primarily because *all* of the tablets it tested repeatedly "locked-up" or "froze," ending any possible use and requiring "hard shutdowns" to temporarily fix:

> "The Monster M7 tablet we tested recently has a problem: It locks up regularly. We've bought three samples so far, and have had trouble with all three staying active during our continuous-use battery test. The lockup— evidenced by a frozen or blank screen while the backlight stays on—happened anytime from within an hour to several hours of use while surfing the Web using Wi-Fi, or even while just sitting idle. We were able to perform a hard shutdown and restart to clear the problem, until it happened again. . . . Based on our experience with multiple devices in our labs, we have to give the M7 a Don't Buy recommendation."[12]

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of Consumer Reports article, the article itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced article.**

66.     Similarly, in 2014, Product-Reviews.net found that consumers still complained of the "freezing" issue, in droves (along with the notorious charging port issues):

> "A year after Consumer Reports gave this tablet a 'don't buy' rating, we can see that negative reports are still coming in this month at Walmart, the retailer which sells the Monster M7 Tablet exclusively.
>
> To give you an example of this, head to the Monster M7 Tablet review page here over at Walmart, and you'll see that there are a whopping 1011 reviews that have been left by those that have already bought one.

---

[12] Consumer Reports, *Monster M7 Tablet Locks Up in Consumer Reports Test*, available at http://www.consumerreports.org/cro/news/2013/11/monster-m7-tablet-locks-up-in-consumer-reports-test/index.htm (last accessed January 25, 2016).

Look to the right of the page, select *'Newest to Oldest'* and you will see that the first 10 reviews left are actually all negative 1-star reviews.

The majority of these reviews have a worrying theme to them as well – either the charging port snapped, or the charging port was pushed or forced into the Monster M7 so that it wouldn't charge anymore.

Combine that with other complaints about freezing and it looks this tablet is still having problems in 2014. Those user reviews do not lie and when you have hundreds of reports coming in, all about the broken Monster M7 tablet charging port, you may be better off looking elsewhere for a cheaper tablet this month."[13]

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a website, the website itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced website.**

67.     Tablets cannot be used while "frozen," and "hard shutdowns" can result in lost data and other consequential damages. Consumers will pay less for tablets that routinely "freeze" than for tablets that continually operate under normal conditions, if they buy such tablets at all.

**ANSWER:     Defendant ESI is unable to form a belief as to the truth or falsity of the allegations contained in Paragraph 67 of Plaintiffs' First Amended Class Action Complaint due to ambiguity created by the usage of undefined terms. In the event any additional answer is required, Defendant ESI denies the allegations contained in Paragraph 67 of Plaintiffs' First Amended Class Action Complaint.**

**IV.     Thousands have Complained About Defendants' Defective Tablets.**

68.     Consumer complaints over M7 tablets are legion. Thousands have complained about broken charger ports, as well as Defendants' failure to adequately honor their warranties.

---

[13] Product-Reviews.net, *Monster M7 Tablet*, available at http://www.product-reviews.net/2014/11/22/monster-m7-tablet-charging-port-freeze-problems-persist (last accessed January 6, 2016).

Fox News has reported on it.[14] A cottage industry of dedicated online repair shops have profited from it.[15] As one website put it, "[t]his is not an exaggeration folks, [the USB ports] ALL break off," and yet "Monster seems to ignore the problem and keeps on selling them":

## Known Issues

Most of the apps you want on the tablet want to be in "flash" memory. Since there is only 1GB, this becomes an issue right away.

Now the "kicker": the microUSB connectors on these tablet will all eventually break from the motherboard, requiring micro soldering for repair. This is not an exaggeration folks, they ALL break off (unless you never plug the cable in; which means you won't use it long since this is the only way to charge the battery). I have seen a multitude of posts about this problem all over the web. Monster seems to ignore the problem and keeps on selling them. If you go through the trouble of contacting support and trouble yourself with returning it, you will not see it for six to eight weeks, at least, and you will not get you're tablet back, but rather some tablet they had laying around. This is maddening! *So you think you were smart and bought the tablet at Walmart and paid for the extended warranty?* Ha! They'll just give you your money back. *But what about all the stuff I had on it?* Bummer.

**Figure 23**.[16]

　　　　ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a website, the website itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced website.  Defendant ESI denies the remaining allegations contained in Paragraph 68 of Plaintiffs' First Amended Class Action Complaint.

---

[14] Fox News, *Mom deals with monster problem trying to get tablet repaired* (noting estimated 50 calls to warranty servicer, without avail) (reported on August 27, 2014), available at http://www.fox4kc.com/204/08/27/mom-deals-with-monster-problem-trying-to-get-tablet-repaired/ (last accessed December 29, 2015).

[15] *See*, *e.g.*, https://www.ebay.com/itm/321559681344 (offering "Fast Repair Service for Micro USB Charging Sync Port" on "Monster M7 7" Tablet" for $124.99, with 74 repairs sold and 100% positive feedback) (last accessed December 29, 2015).

[16] IFixIt, *Monster M7 Tablets*, https://www.ifixit.com/device/monster_m7_tablet (last accessed December 29, 2015)

69. For instance, as of January 28, 2016, *all* of the five most recent complaints that display on walmart.com's review page complain of charging port troubles (coupled with Defendants' widespread failure to adequately honor their warranties). *See* <u>Figures 24-28,</u> below.



**Figure 24** (noting "power jack came out after 3 months" and poor warranty service).



**Figure 25** (noting that a "port fell out in less than three months" and poor warranty service).



**Figure 26** (noting the poor solder joins on the USB port and poor warranty service).



**Poor Customer Service**                                          7/29/2015

★ ☆ ☆ ☆ ☆  by fveseth

I really liked this tablet, good value for the price - for about 3 months. Then like everyone else, my tablet would no longer charge. In fact the charge port came right out of the tablet.

Because I had if for such a short time, it was still under warranty. So, even though we had purchased the service plan from Wal Mart, we had to go back to the company.

They were very helpful up to the point that they got my tablet. They have now had it in their possession for 10 weeks - almost as long as it worked. They did respond to my first email after they received the tablet, they said they were working on it and if I had questions to call their customer service number. I have called a couple of times in the last 3 weeks & their recording assures you they will get back to you in 48 business hours. No response to my calls or to my last email. Not sure when or if I will ever have a Monster tablet again. It is really too bad because it was a very nice tablet for the price, exactly what I needed. If they would just upgrade this one issue I think it would be a great tablet.

**Figure 27** (noting that "the charge port came right out of the tablet" within about 3 months, and also noting poor warranty service).

**Bad tablet**                                                    5/4/2015

★ ☆ ☆ ☆ ☆  by dadams417

Bought 2 of these tablets. One was fine the other the port to charge is faulty. I was told there has been an issue with that. It has taken a lot of effort to keep on top of this with Monster tablet. They don't handle the situation well.

**Figure 28** (noting that "the port to charge is faulty" and that Defendants have not handled the situation well).

> **ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the contents of a website, the website itself is the best evidence of its contents, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced website. Defendant ESI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 69 of Plaintiffs' First Amended Class Action Complaint.**

70.     Many consumers have also complained through the Better Business Bureau, often with stories similar to the following (*i.e.*, complaining of a tablet that did not last very long (here, not even a single day) that gets stuck in Defendants' inadequate warranty system, without resolution (here, for nearly a year)):



01/23/2015   Problems with Product / Service | Read Complaint Details

**Complaint**
Defective tablet. Was told to send in for repairs and it would be replaced. Its been 7 months and no replacement.
I sent my tablet in for repairs in the beginning of may. I supplied all documents and pictures as requested by Monster. I was told they would look into it. After months of back and forth with customer service, i was finally told on August 26th that i would have a replacement tablet sent but they did not have the color of my tablet in stock (pink) and what other color would i like. I replied back the same day and said blue would be fine. After waiting several weeks. ...no tablet. Ive sent more emails and finally got a call from the manager "Jose" who told me my tablet would ship in the next few days. It is now Dec. 10th and i STILL have not received my replacement tablet. At this point, I've already had to PAY to ship it to them and had to buy a new tablet (different brand...never give your money to these con artists), i want a refund. I do not want the tablet, it broke the VERY first day I used it (charger port completely embedded inside tablet). It takes a minimum of 2 days to get a response from customer service, im guessing because they ha e ALOT of repairs to complete on their unsatisfactory tablets. And when they finally respond, its always the same generic response. I want my money back.

**Desired Settlement**
I want the full amount I paid for this tablet (79.00) plus the shipping (7.87)

**Business Response**
We will reach out to the customer and assist her with a refund for the tablet. Once we receive the required information, we will process a refund check.

**Consumer Response**
(The consumer indicated he/she DID NOT accept the response from the business.)
I emailed George back with my personal infirmation. I am awaiting a response. I do not want to close this case until myrefund is received. If their refund process is anything like their repair pprocess, i am not hopeful.

**Final Business Response**
We are assisting this customer with a refund already. She is aware of this and we are in the process of cutting a check for her. It will be mailed out late next week.

**Final Consumer Response**
(The consumer indicated he/she DID NOT accept the response from the business.)
I still have not received a refund check. The entire customer service department is EXTREMELY slow.

**Figure 29**.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 70 of Plaintiffs' First Amended Class Action Complaint.**

71.     M7 product defects are widespread, are always present at the time of purchase, and have harmed thousands of consumers in the same, predictable, well-known ways. If consumers knew about these product defects, they would have paid less for their M7s, if they purchased them at all.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 71 of Plaintiffs' First Amended Class Action Complaint.**

### V.     Plaintiff Baez's Experiences with His Defective M7s.

72.     During October of 2014, Plaintiff Baez purchased two Monster M7 tablets from walmart.com for approximately $70 each.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 72 of Plaintiffs' First Amended Class Action Complaint.**

73.     At the time of his purchase, Plaintiff Baez reviewed the product specifications concerning, among other things, the presence of 16GB of storage. He noted that the M7 specifications compared favorably with other competitive products and viewed them as a signal of overall product quality. He relied on the accuracy of these specifications and found them material to his purchasing decision.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 73 of Plaintiffs' First Amended Class Action Complaint.**

74.     Plaintiff Baez also relied on Monster's general brand equity and reasonably expected that his M7 would be fit for its advertised use as a functioning mobile computer tablet. He did not expect that he would be deprived of access to his tablets or of the data that he or his family accumulated on it.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 74 of Plaintiffs' First Amended Class Action Complaint.**

75.     Nonetheless, Plaintiff Baez's M7s immediately failed to operate as advertised. Both tablets repeatedly "froze," and consequently, lost functionality, and neither functioned with adequate storage space for applications.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 75 of Plaintiffs' First Amended Class Action Complaint.**

76.     Accordingly, Plaintiff Baez wrote an email to "Monster Support," stating that "[w]e opened [the M7s] a few days ago and they are not working properly. I have left several phone messages and no one has returned my call. In addition Wal-Mart will not return or exchange these tablets leaving me with two tablets that are essentially useless."

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 76 of Plaintiffs' First Amended Class Action Complaint.**

77.     "Monster Support" attempted to provide Plaintiff Baez with a host of different software updates to address his concerns, but none actually fixed the problems.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 77 of Plaintiffs' First Amended Class Action Complaint.**

78.     On several occasions, Plaintiff Baez's M7s would "freeze" so severely that they had to undergo "hard resets" before functioning again. To do a hard reset, Plaintiff Baez had to hold the power and volume buttons simultaneously for a certain length of time.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 78 of Plaintiffs' First Amended Class**

**Action Complaint.**

79.     Each of these hard resets, however, would completely wipe the tablet of all stored data and updates, causing Plaintiff Baez to lose any and all pictures, videos, and application data stored on the tablet and suffer other consequential damages.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 79 of Plaintiffs' First Amended Class Action Complaint.**

80.     Plaintiff Baez estimates that he had to perform hard resets at least three times for each tablet, and that he lost pictures, videos, and application data each time as a result of the M7's deficiencies.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 80 of Plaintiffs' First Amended Class Action Complaint.**

81.     Additionally, Plaintiff Baez's tablets suffered from insufficient application storage, because he was only able to access a small fraction of the 16GB of storage that Defendants' advertised. He was repeatedly unable to run applications properly due to artificially imposed storage limitations.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 81 of Plaintiffs' First Amended Class Action Complaint.**

82.     Moreover, within six months, the Micro USB port in one of Plaintiff Baez's tablets had come loose, causing it to be unable to charge with more than a few minutes worth of power, and the Micro USB port in his other tablet broke off completely, rendering it fully inoperable.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 82 of Plaintiffs' First Amended Class Action Complaint.**

83.     Again, Plaintiff Baez contacted "Monster Support," who emailed him instructions to ship his M7 tablet to its authorized warranty servicer, LTI Computer, Inc. ("LTI"), in Walnut, California, for warranty service and repairs. As instructed, Plaintiff Baez delivered his M7 to LTI's service location in Walnut, California.

**ANSWER: Defendant ESI admits only that LTI Computer, Inc., provided warranty service and repairs for the M7 tablet. Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 83 of Plaintiffs' First Amended Class Action Complaint.**

84.     Between August of 2015 and February of 2016, Plaintiff Baez made several calls to determine the status of his tablet. Initially, Defendants attempted to impose repair and shipping fees on Plaintiff Baez, effectively claiming that he was responsible for their own well-known defects.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth of the allegation that Plaintiff Baez made several calls to determine the status of his tablet. Defendant ESI denies the remaining allegations contained in Paragraph 84 of Plaintiffs' First Amended Class Action Complaint.**

85.     Ultimately, after over six months of "service," Defendants shipped Plaintiff Baez a different, refurbished tablet that suffered from the same defects as the others. This tablet did not contain the pictures, videos, or application data that was on the tablet Plaintiff had originally sent in. Plaintiff Baez and his family, who are tired of losing data and of reinstalling applications,

do not use the refurbished tablet.

**ANSWER: Defendant ESI admits only that it shipped Plaintiff Baez a refurbished tablet to replace the original tablet he purchased. Defendant ESI has insufficient knowledge to form a belief as to the truth of the allegations that Plaintiff Baez and his family do not use the refurbished tablet and that the refurbished tablet does not contain the pictures, video or application data that was on Baez's original tablet. Defendant ESI denies the remaining allegations contained in Paragraph 84 of Plaintiffs' First Amended Class Action Complaint.**

86.     Had Plaintiff Baez known of the defects in the M7 product line, or that M7s do not conform to their advertised technical specifications, or that Defendants fail to provide adequate warranty services for M7s, he would not have been willing to pay the full price for his M7 tablets, or he would not have purchased them at all.

**ANSWER: Defendant ESI denies the alleged defects in the M7 product line, denies that M7 tablets do not conform to their advertised technical specifications, and denies that Defendants fail to provide adequate warranty services for M7 tablets. On those bases, Defendant ESI denies the allegations contained in Paragraph 86 of Plaintiffs' First Amended Class Action Complaint.**

87.     As it stands, Plaintiff Baez has suffered actual damages as the result of Defendants' conduct in the forms of monies paid to purchase his M7s, as well as additional consequential damages resulting from Defendants' fraud.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 87 of Plaintiffs' First Amended Class Action Complaint.**

## VI.    Plaintiff Grays's Experiences with Her Defective M7s.

88.    During March of 2014, Plaintiff Grays purchased a Monster M7 from a Wal-Mart retail location in California at a cost of approximately $100.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 88 of Plaintiffs' First Amended Class Action Complaint.**

89.    At the time of her purchase, Plaintiff Grays reviewed the product packaging and the representations concerning, among other things, the presence of a 5.0MP camera and 16GB of storage. She noted that these specifications compared favorably with other competitive products and viewed them as a signal of overall product quality. She relied on the accuracy of these specifications and found them material to her purchasing decision.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 89 of Plaintiffs' First Amended Class Action Complaint.**

90.    Similarly, Plaintiff Grays relied on Monster's general brand equity and reasonably expected that her M7 would be fit for its advertised use as a functioning mobile computer tablet. She did not expect that she would be deprived of access to her tablet or of the data she accumulated on it.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 90 of Plaintiffs' First Amended Class Action Complaint.**

91.    Nonetheless, within a month of light use, the charger port of Plaintiff Grays's M7 broke off from the circuit board. Because this defect manifested within a month's time, Plaintiff

Grays was able to return her M7 to the retail store for a refund. In doing so, however, she lost all the pictures, videos, and applications stored on the tablet.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 91 of Plaintiffs' First Amended Class Action Complaint.**

92.     Believing that this defect was a fluke and again relying on Defendants' product representations and the strength of the Monster brand, Plaintiff Grays bought a replacement M7 from walmart.com in April of 2014, again paying approximately $100.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 92 of Plaintiffs' First Amended Class Action Complaint.**

93.     This second tablet lasted for approximately half a year, but by November of 2014 it had also failed as a result of the charger port breaking from the circuit board. Because this defect took longer than a month to manifest, Plaintiff Grays could not return her tablet to the store, but instead had to contact Defendants directly for warranty service.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 93 of Plaintiffs' First Amended Class Action Complaint.**

94.     Plaintiff Grays promptly requested warranty service, and on November 25, 2014, "Monster Support"—using the email address "service@mymonstertablet.com"—emailed Plaintiff Grays with instructions to ship her M7 tablet to its authorized warranty servicer, LTI Computer, Inc. ("LTI"), in Walnut, California, for warranty service and repairs. As instructed, Plaintiff Grays delivered her M7 to LTI's service location in Walnut, California, by December

23, 2014.

**ANSWER: Defendant ESI admits only that LTI Computer, Inc., provided warranty service and repairs for the M7 tablet. Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 94 of Plaintiffs' First Amended Class Action Complaint.**

95.     "Monster Support" claimed a "normal turn-around time" of "3-6 weeks" to repair the charger port issue experienced by Plaintiff Grays.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 95 of Plaintiffs' First Amended Class Action Complaint.**

96.     After approximately six weeks, Plaintiff Grays requested a status update. "Monster Support" responded in February, stating that her M7 was "currently in our lab going through the initial testing state" and that it was "diligently working on returning [Plaintiff Grays's] tablet as soon as possible." It gave her a telephone number to call for future status updates.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 96 of Plaintiffs' First Amended Class Action Complaint.**

97.     Between February and July of 2015, Plaintiff Grays made several calls to the telephone number provided by "Monster Support." She did not reach any representatives, but was able to leave messages. Her calls were not returned.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 97 of Plaintiffs' First Amended Class**

Action Complaint.

98.     On July 2, 2015, Plaintiff Grays again wrote to "Monster Support" to request the status of her tablet, noting that "[y]our company said it would only take up to eight weeks to fix and it has been seven months. I have contacted your company by phone and no one has returned my calls." "Monster Support" wrote back, telling Plaintiff Grays that her M7 was still in the initial testing stage and that its technicians "cannot skip steps to speed the process up."

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 98 of Plaintiffs' First Amended Class Action Complaint.**

99.     Now, more than a year after initially seeking warranty service, Plaintiff Grays has still not received from "Monster Support" a full refund, a repaired tablet, a replacement tablet, or even a status update indicating anything other than that her tablet is still undergoing "initial testing." As a result, she has been denied access to the pictures, videos, and application data that was stored on her tablet and suffered other consequential damages.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 99 of Plaintiffs' First Amended Class Action Complaint.**

100.    Had Plaintiff Grays known of the defects in the M7 product line, or that M7s do not conform to their advertised technical specifications, or that Defendants fail to provide adequate warranty services for M7s, she would not have been willing to pay the full price for her M7 tablets, or she would not have purchased them at all.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 100 of Plaintiffs' First Amended Class Action Complaint.**

101.     As it stands, Plaintiff Grays has suffered actual damages as the result of Defendants' conduct in the forms of monies paid to purchase her M7 and ship it to Defendants' warranty servicer, as well as additional consequential damages resulting from Defendants' fraud.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 101 of Plaintiffs' First Amended Class Action Complaint.**

## CLASS ALLEGATIONS

102.     **Class Definitions:** Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a class and subclass of similarly situated individuals (collectively, the "Classes"), defined as follows:

> **Nationwide Class**: All individuals in the United States who purchased a Monster M7 tablet computer.
>
> **California Subclass**: All members of the Nationwide Class who are domiciled in the State of California or who purchased a Monster M7 tablet computer online at "walmart.com."
>
> **Illinois Subclass**: All members of the Nationwide Class who are domiciled in the State of Illinois.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER: Defendant ESI admits only that Plaintiffs purport to bring this action on behalf of the classes defined in paragraph 102 of Plaintiffs' First Amended Class Action Complaint, but denies that a class action is warranted and denies the remaining allegations**

**contained in Paragraph 102 of Plaintiffs' First Amended Class Action Complaint.**

103.     **Numerosity**: The exact number of members of the Classes is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Classes likely consist of thousands of individuals and other entities. Members of the Classes can be easily identified through Defendants' records and/or Defendants' retail partners' records.

**ANSWER: Defendant ESI admits only that the exact number of members of the proposed classes is not available to Plaintiffs at this time and that the proposed classes may consist of more than one thousand individuals. Defendant ESI denies the remaining allegations contained in Paragraph 103 of Plaintiffs' First Amended Class Action Complaint.**

104.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

a)     Whether M7 tablets suffer from design and/or manufacturing defects;

b)     Whether M7 tablets conform to Defendants' product advertisements;

c)     Whether M7 tablets use non-compliant and defective Micro USB components that routinely cause device failure;

d)     Whether M7 tablets take 5.0MP pictures or offer 16GB of available storage;

e)     Whether Defendants' conduct violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;

f)     Whether Defendants' conduct violated Cal. Civ. Code §§ 1750, *et*

*seq.*;

g)      Whether Defendants' conduct violated Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

h)      Whether Defendants' conduct constitutes a breach of implied warranty of merchantability pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*; and

i)      Whether Defendants' conduct constitutes a breach of express warranty, Cal. Com. Code § 2313.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 104 of Plaintiffs' First Amended Class Action Complaint.**

105.    **Adequate Representation**: Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are typical of the claims of the other members of the Classes. Plaintiffs and members of the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiffs and the Classes. Plaintiffs have no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor their counsel has any interest adverse to those of the other members of the Classes.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 105 of Plaintiffs' First Amended Class Action Complaint.**

106.    **Appropriateness**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The

damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 106 of Plaintiffs' First Amended Class Action Complaint.**

107.     Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 107 of Plaintiffs' First Amended Class Action Complaint. Answering further, Defendant ESI states that Plaintiffs maintain no right to revise their allegations without first obtaining leave of court to do so.**

**<u>COUNT I</u>**
**Violation of Magnuson-Moss Warranty Act**
**Breach of Full Written Warranty**
**15 U.S.C. §§ 2301 *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

**Since Defendants have moved to dismiss this Count, Defendant ESI makes no answer.**

**COUNT II**
**Violation of Magnuson-Moss Warranty Act**
**Breach of Limited Written Warranty and Express and Implied Warranties**
**15 U.S.C. §§ 2301** *et seq.*
**(On Behalf of Plaintiffs and the California Subclass)**

130.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

**ANSWER:     Defendant ESI incorporates by reference its answers to the foregoing allegations as though fully set forth herein.**

131.     Plaintiffs and the California Subclass members purchased M7 tablets that were manufactured by Defendant ESI under Defendant Monster's supervision and control.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 131 of Plaintiffs' First Amended Class Action Complaint.**

132.     The retail prices for M7 tablets (and the amounts actually paid by Plaintiffs and the members of the California Subclass) were as high as $149, and at all times exceeded $25 per tablet.

**ANSWER: Defendant ESI admits the allegations contained in Paragraph 132 of Plaintiffs' First Amended Class Action Complaint.**

133.     The M7 tablets purchased by Plaintiffs and the members of the California Subclass were sold in California, whether through retail stores physically located in California, or through walmart.com, an entity located in and operating out of San Francisco, California. On information and belief, items sold on walmart.com are identified in California at the time of purchase; offers to purchase are accepted by walmart.com in California; consumers on walmart.com are charged for shipping costs; product shipment and delivery orders are issued by walmart.com from California; and walmart.com imposes online terms that are to be "governed by and construed under the law of the State of California."

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 133 of Plaintiffs' First Amended Class Action Complaint.**

134.     M7 tablets are consumer products as defined in 15 U.S.C. § 2301(1) because they are tangible personal property distributed in commerce and are normally used for personal or household purposes.

**ANSWER:     Defendant ESI admits the allegations contained in Paragraph 134 of Plaintiffs' First Amended Class Action Complaint.**

135.     Plaintiffs and members of the California Subclass are consumers as defined in 15 U.S.C. § 2301(3).

**ANSWER:     Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 135 of Plaintiffs' First Amended Class Action Complaint.**

136.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5) because they are in the business of making consumer products directly or indirectly available to consumers and because they have issued written warranties to consumers.

**ANSWER: Defendant ESI admits only that its business involves indirectly making consumer products available to consumers. Defendant ESI denies the remaining allegations contained in Paragraph 136 of Plaintiffs' First Amended Class Action Complaint.**

137.     On the inside of each M7 package, a written "Limited Warranty" is printed on the backside of the Monster "Quick Start Guide." LTI, Defendants' exclusive and actual or apparent agent for warranty service, issued the terms of this "Limited Warranty," subject to Defendants' oversight and conditions, and Defendants further adopted, ratified, and co-warranted

this "Limited Warranty" by including it within each M7 package.

**ANSWER: Defendant ESI admits only that the terms of a written "Limited Warranty" provided by LTI were printed on the reverse side of the "Quick Start Guide" contained within each M7 package. Defendant ESI denies the remaining allegations contained in Paragraph 137 of Plaintiffs' First Amended Class Action Complaint.**

138.     Defendants' "Limited Warranty" covered "parts and labor against manufacturing defects in materials and workmanship for a period of one (1) year." Pursuant to this "Limited Warranty," Defendants promise to repair or replace, at no charge, M7s suffering from such defects at LTI's California facilities.

**ANSWER: Defendant ESI denies that the "Limited Warranty" was issued by either defendant. Defendant ESI further states that, to the extent this Paragraph seeks to characterize the terms of the "Limited Warranty", the "Limited Warranty" itself is the best evidence of its terms, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the "Limited Warranty."**

139.     As such, Defendant ESI states, in writing and in connection with each M7 purchase, that they will provide a "Limited Warranty" for a specific period of one year, whereby they will undertake to cover or to otherwise take remedial action with respect to manufacturing defects in materials and workmanship (in the event that such defects exist). By including this "Limited Warranty" on the inside packaging for each M7, Defendants offered it in connection with each M7 sale, and it forms part of the basis of the bargain between Defendants and each ultimate purchaser of an M7 tablet, including Plaintiffs and each member of the California Subclass. Accordingly, Defendants' "Limited Warranty" constitutes a "written warranty" pursuant to 15 U.S.C. § 2301(6).

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 139 of Plaintiffs' First Amended Class Action Complaint.**

140.    The M7 tablets purchased by Plaintiffs and the members of the California Subclass contained numerous defects and failed to perform as Defendants promised. Manufacturing defects of materials and workmanship with the tablets, present at the time of sale, include but are not limited to:

> (a)    Micro USB cords manufactured with latching blades of inconsistent height, but taller than the maximum allowed under Micro USB specifications, which, combined with other defects, were substantially certain to cause total device failure within the one-year warranty period;
>
> (b)    Micro USB charging ports, soldered using substandard metals and/or soldering temperatures and/or soldering techniques, which, combined with other defects, were substantially certain to cause total device failure within the one-year warranty period; and
>
> (c)    A failure to adjust manufacturing or workmanship processes to account for substantial, known product defects (*e.g.*, by altering soldering methods, adding soldering contacts, increasing solder density, using port straps, adding epoxy glues, installing modified or updated software, or other such means).

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 140 of Plaintiffs' First Amended Class Action Complaint.**

141.    In breach of their "Limited Warranty," Defendants did not repair or replace, at no charge, M7s suffering from these defects.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 141 of**

**Plaintiffs' First Amended Class Action Complaint.**

142.     The defects as described above were present at the time of sale for each M7 tablet, and thus were not caused by damage while in the possession of Plaintiffs and the California Subclass, nor were they the result of unreasonable use.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 142 of Plaintiffs' First Amended Class Action Complaint.**

143. Defendants have not demonstrated that workable repairs for the aforementioned defects even exist, and replacing M7s with identical and equally defective M7s cannot bring them into compliance with Defendants' "Limited Warranty."

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 143 of Plaintiffs' First Amended Class Action Complaint.**

144.     Plaintiffs notified Defendants of their breaches within a reasonable time by writing to and calling Defendants' "Monster Support" numerous times within the warranty period. Defendants were also on notice of their design and/or manufacturing defects from the complaints and/or repair or replacement requests that they received or reviewed, and from their own testing, diagnostic, maintenance, repair, and/or replacement records.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 144 of Plaintiffs' First Amended Class Action Complaint.**

145.     Nevertheless, Plaintiffs and the California Subclass were not required to notify Defendants of their breaches because they are the manufacturers and suppliers of M7 tablets, not the retail sellers, and because affording Defendants a reasonable opportunity to cure their breaches would have been futile. Indeed, even after Plaintiffs notified Defendants of their breaches, they refused to acknowledge any defects and would not repair their tablets or replace

them with tablets that did not suffer from such defects, nor would they fully refund the money they ultimately paid.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 145 of Plaintiffs' First Amended Class Action Complaint.**

146.    Defendants failed to cure their warranty breaches even after being given a reasonable amount of time and/or a reasonable number of attempts to do so, and did not fully refund money to Plaintiffs of the California Subclass members or otherwise take adequate remedial action.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 146 of Plaintiffs' First Amended Class Action Complaint.**

147.    As detailed in Counts III-IV, below, Defendants also made and breached express and implied warranties, under California law, to Plaintiffs and the members of the California Subclass.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 147 of Plaintiffs' First Amended Class Action Complaint.**

148.    As a direct and proximate cause of Defendants' warranty representations and breaches, Plaintiffs and the other members of the California Subclass have suffered actual damages in the form of the difference between the prices they paid for the M7 tablets as warranted and the value of the tablets they actually received. Had Plaintiffs and the members of the California Subclass known that their Monster M7 tablets would not be as warranted, they would not have purchased them at the prices paid, if at all.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 148 of Plaintiffs' First Amended Class Action Complaint.**

149.     As a result of Defendants' violations of Magnuson-Moss, Plaintiffs and the California Subclass seek to recover actual damages, injunctive and declaratory relief, costs and attorneys' fees, and all other available remedies.

**ANSWER: Defendant ESI admits only that Plaintiffs purport to seek the relief described in this paragraph. Defendant ESI denies that Plaintiffs are entitled to such relief and denies that Plaintiffs may assert any claims on behalf of the California subclass. Defendant ESI denies the remaining allegations contained in Paragraph 149 of Plaintiffs' First Amended Class Action Complaint.**

**COUNT III**
**Breach of Express Warranty**
**Cal. Com. Code § 2313 *et seq*.**
**(On Behalf of Plaintiffs and the California Subclass)**

150.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

**ANSWER:     Defendant ESI incorporates by reference its answers to the foregoing allegations as though fully set forth herein.**

151.     Plaintiffs and the members of the California Subclass bought M7 tablets that were manufactured by Defendant ESI under Defendant Monster's supervision and control.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 151 of Plaintiffs' First Amended Class Action Complaint.**

152.     The M7 tablets purchased by Plaintiffs and the members of the California Subclass were sold in California, whether through retail stores physically located in California, or through walmart.com, an entity located in and operating out of San Francisco, California. On information and belief, items sold on walmart.com are identified in California at the time of purchase; offers to purchase are accepted by walmart.com in California; consumers who make

purchases on walmart.com are charged for shipping costs; product shipment and delivery orders are issued by walmart.com from California; and walmart.com imposes online terms that are to be "governed by and construed under the law of the State of California."

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 152 of Plaintiffs' First Amended Class Action Complaint.**

153.    Defendants made and breached their express written "Manufacture Warranty" and express written "Limited Warranty" as described in Counts I and II, above.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 153 of Plaintiffs' First Amended Class Action Complaint.**

154.    Defendants also expressly warranted by affirmation of fact, promise, and description that M7s conform to "Micro USB" specifications and have 5.0MP cameras and 16GB of storage, and that the batteries within M7 tablets "will be charged" when consumers "[c]onnect the supplied DC charger to the 'Micro USB/Charger Interface' port on the Tablet and the AC outlet on the wall."

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the terms of various writings, the writings themselves are best evidence of their terms, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced writings.**

155.    Plaintiffs and the California Subclass purchased their M7 tablets with the reasonable expectation that they would operate according to the technical specifications on and within the product packaging and would otherwise conform to and be protected by Defendants' express warranties. Plaintiffs and the California Subclass relied on the accuracy of Defendants'

express warranties when making their purchasing decisions, and these express warranties formed part of the basis of the bargain for their purchases. If Plaintiffs and the California Subclass members had known that M7 tablets were not as expressly warranted, they would not have bought them at the prices paid, if at all.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 155 of Plaintiffs' First Amended Class Action Complaint.**

156.    The M7 tablets were not as expressly warranted and failed to perform as Defendants promised. Defendants breached their express warranties by producing and selling M7 tablets with design defects and in substandard condition with defects in workmanship and materials. These defects made it substantially certain that such tablets would fail to operate properly throughout the one-year warranty period. Rather, defects present at the time of sale have consistently and predictably rendered the M7 tablets inoperable within the applicable warranty period.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 156 of Plaintiffs' First Amended Class Action Complaint.**

157.    Further, at the time of each M7 sale to Plaintiffs and the members of the California Subclass, Defendants' M7 tablets did not conform to the written technical specifications listed on the product packaging, such as meeting "Micro USB" specifications, having 5.0MP cameras, or having 16GBs of storage.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 157 of Plaintiffs' First Amended Class Action Complaint.**

158.    Defendants have failed to honor their express warranties and have failed to repair

or replace, free of charge, defective M7 tablets with tablets that have been cured from the aforementioned defects.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 158 of Plaintiffs' First Amended Class Action Complaint.**

159.    The defects in M7s were not open or obvious to consumers prior to purchase.

**ANSWER: Defendant ESI denies that M7 tablets had the alleged defects and on that basis denies the allegations contained in Paragraph 159 of Plaintiffs' First Amended Class Action Complaint.**

160.    Plaintiffs notified Defendants of their breaches within a reasonable time by writing and calling Defendants' "Monster Support" within the warranty period. Defendants were also on notice of their design and manufacturing defects from the complaints and repair or replacement requests that they received or reviewed, and from their testing, diagnostic, maintenance, repair, and replacement records.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 160 of Plaintiffs' First Amended Class Action Complaint.**

161.    Nevertheless, Plaintiffs and the California Subclass were not required to notify Defendants of their breaches because they were the manufacturers and suppliers of M7s, not the retail sellers, and because affording Defendants a reasonable opportunity to cure their breaches would have been futile. Indeed, even after Plaintiffs notified Defendants of their breaches, they refused to acknowledge the defects or repair or replace their tablets in a manner that cured the defects.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 161 of Plaintiffs' First Amended Class Action Complaint.**

162.     As a direct and proximate cause of Defendants' express warranty representations and breaches, Plaintiffs and the other members of the California Subclass have suffered actual damages, in the form of the difference between the prices they paid for the M7 tablets as warranted and the value of the tablets they actually received.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 162 of Plaintiffs' First Amended Class Action Complaint.**

163.     Plaintiffs and the Class members are entitled to recover actual and incidental damages, including diminution in value, costs, attorney fees, and other relief as authorized by law.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 163 of Plaintiffs' First Amended Class Action Complaint.**

**COUNT IV**
**Violations of the Song-Beverly Consumer Warranty Act**
**Breach of Express and Implied Warranties**
**Cal. Civ. Code §§ 1792 *et seq*.**
**(On Behalf of Plaintiffs and the California Subclass)**

164.     Plaintiffs incorporate by reference the foregoing allegations.

**ANSWER:     Defendant ESI incorporates by reference its answers to the foregoing allegations as though fully set forth herein.**

165.     Plaintiffs and the members of the California Subclass purchased M7 tablets that were manufactured by Defendant ESI under Defendant Monster's supervision and control.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 165 of Plaintiffs' First Amended Class Action Complaint.**

166.     The M7 tablets purchased by Plaintiffs and the members of the California Subclass were sold in California, whether through retail stores physically located in California, or

through walmart.com, an entity located in and operating out of San Francisco, California. On information and belief, items sold on walmart.com are identified in California at the time of purchase; offers to purchase are accepted by walmart.com in California; consumers who make purchases on walmart.com are generally charged for shipping costs; product shipment and delivery orders are issued by walmart.com from California; and walmart.com imposes online terms that are to be "governed by and construed under the law of the State of California."

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 166 of Plaintiffs' First Amended Class Action Complaint.**

167.     At the time of their M7 purchases, Defendants were in the business of selling consumer electronics like the M7 and held themselves out as having special knowledge and skill regarding such goods.

**ANSWER:     Defendant ESI admits only that it was in the business of selling consumer electronics to retailers at all relevant times. Defendant ESI denies the remaining allegations contained in Paragraph 167 of Plaintiffs' First Amended Class Action Complaint.**

168.     As detailed in Counts I-III, above, Defendants gave Plaintiffs and the members of the California Subclass several express written warranties, including a full "Manufacture Warranty" against all defects, a "Limited Warranty" against defects in materials or workmanship, and several written affirmations of facts, including but not limited to express warranties that M7s conform to "Micro USB" specifications, have 5.0MP cameras, have 16GB of storage, and are designed such that their batteries "will be charged" when consumers "[c]onnect the supplied DC charger to the 'Micro USB/Charger Interface' port on the Tablet

and the AC outlet on the wall."

**ANSWER: Defendant ESI states that, to the extent this Paragraph seeks to characterize the terms of various writings, the writings themselves are best evidence of their terms, and Defendant ESI denies this Paragraph to the extent the allegations are inconsistent with the terms of the referenced writings.**

169.     As detailed in Counts I-III, above, Defendants breached these express written warranties by selling substandard M7 tablets with design defects and manufacturing defects of workmanship and materials. These defects, present at the time of sale, made it materially unlikely that the M7 tablets would operate properly throughout the one-year warranty period. Further, defects present at the time of sale prevented the M7 tablets from operating at a level consistent with their expressly warranted written technical specifications.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 169 of Plaintiffs' First Amended Class Action Complaint.**

170.     By operation of law, Defendants also issued implied warranties that their M7s are merchantable, in that they would, at a minimum, be fit for the ordinary purposes for which such goods are used.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 170 of Plaintiffs' First Amended Class Action Complaint.**

171.     The intended and ordinary purpose of an M7 tablet is to operate as a functioning tablet computer.

**ANSWER: Defendant ESI admits the allegations contained in Paragraph 171 of Plaintiffs' First Amended Class Action Complaint.**

172.     Defendants breached their implied warranties by producing and selling M7

tablets with design defects and in substandard condition with defects in workmanship and materials. These defects made M7 tablets unfit for their intended and ordinary purposes because they caused M7s to be substantially certain to prematurely fail and to cease operating as functioning tablet computers, as well as to "freeze" periodically and to function below their advertised specifications.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 172 of Plaintiffs' First Amended Class Action Complaint.**

173. By operation of law, Defendants also issued implied warranties that their M7s are merchantable, in that they would, at a minimum, conform to the promises or affirmations of fact made on their containers, such as that they will meet "Micro USB" specifications and have 5.0MP cameras and 16GB of storage.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 173 of Plaintiffs' First Amended Class Action Complaint.**

174. Defendants breached their implied warranties by selling M7 tablets that did not conform to the promises or affirmations of fact made on the packaging, since M7s do not meet "Micro USB" specifications and do not have 5.0MP cameras or 16GB of storage.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 174 of Plaintiffs' First Amended Class Action Complaint.**

175. Any attempts by Defendants to disclaim or limit any implied warranties of merchantability or any remedies are invalid, because they offer a full written warranty, and also because any such disclaimers or limitations are ambiguous, inconspicuous, unconscionable, and unable to be reasonably construed as consistent with the various express written warranties and conduct as demonstrated by Defendants.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 175 of Plaintiffs' First Amended Class Action Complaint.**

176.     The defects in M7s were not open or obvious to consumers prior to purchase.

**ANSWER: Defendant ESI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 176 of Plaintiffs' First Amended Class Action Complaint, and on that basis denies them.**

177.     Plaintiffs notified Defendants of their breaches within a reasonable time by calling and writing to Defendants' "Monster Support" within the warranty period. Defendants were also on notice of their design and manufacturing defects from the complaints and repair or replacement requests that they received or reviewed, and from their testing, diagnostic, maintenance, repair, and/or replacement records.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 177 of Plaintiffs' First Amended Class Action Complaint.**

178.     Nevertheless, Plaintiffs and the California Subclass were not required to notify Defendants of their breaches because they were the manufacturers and suppliers of M7s, not the retail sellers, and because affording Defendants a reasonable opportunity to cure their breaches would have been futile. Indeed, even after Plaintiffs notified Defendants of their breaches, they refused to acknowledge the defects or repair or replace their tablets in a manner that cured the defects.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 178 of Plaintiffs' First Amended Class Action Complaint.**

179.     As a direct and proximate cause of Defendants' warranty representations and breaches, Plaintiffs and the other members of the California Subclass suffered actual

damages in the form of the difference between the price they paid for the M7 tablets as warranted and the value of the tablets they actually received. Had Plaintiffs and the members of the California Subclass known that their Monster M7 tablets were not as warranted, they would not have purchased them at the prices paid, if at all.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 179 of Plaintiffs' First Amended Class Action Complaint.**

180.    The M7 tablets were not altered by Plaintiffs or the members of the California Subclass and were defective when they left the exclusive control of Defendants.

**ANSWER: Defendant ESI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that the M7 tablets were not altered by Plaintiffs of members of the putative California Subclass. Defendant ESI denies the remaining allegations contained in Paragraph 180 of Plaintiffs' First Amended Class Action Complaint.**

181.    Defendants knew that their M7 tablets would be purchased and used by consumers, such as Plaintiffs and the California Subclass, that do not have the requisite technical expertise to independently inspect the tablets for defects that would cause premature failure.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 181 of Plaintiffs' First Amended Class Action Complaint.**

182.    Defendants have not repaired or replaced the M7 tablets purchased by Plaintiffs or the California Subclass in a manner sufficient to cure the aforementioned defects.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 182 of Plaintiffs' First Amended Class Action Complaint.**

183.    Defendants' failure to comply with their express and implied warranty obligations was both knowing and willful.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 183 of Plaintiffs' First Amended Class Action Complaint.**

184.     Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the Class members are entitled to costs, expenses, attorneys' fees, as well as two times the amount of actual damages due to the willfulness of Defendants' failure to comply with their express warranty obligations.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 184 of Plaintiffs' First Amended Class Action Complaint.**

<u>**COUNT V**</u>
**Violation of California's Consumer Legal Remedies Act**
**Cal. Civ. Code §§ 1750 *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

185.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

**ANSWER:     Defendant ESI incorporates by reference its answers to the foregoing allegations as though fully set forth herein.**

186.     The Consumers Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct as described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

**ANSWER:     Defendant ESI denies the allegations contained in Paragraph 186 of Plaintiffs' First Amended Class Action Complaint.**

187.     Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

**ANSWER:     Defendant ESI admits the allegations contained in Paragraph 187 of Plaintiffs' First Amended Class Action Complaint.**

188.     Plaintiffs and each member of the California Subclass are "consumers" as

defined by Cal. Civ. Code § 1761(a).

**ANSWER:     Defendant ESI denies the allegations contained in Paragraph 188 of Plaintiffs' First Amended Class Action Complaint.**

189.     Defendants' M7 tablets are "goods" within the meaning of Cal. Civ. Code § 1761(a).

**ANSWER:     Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 189 of Plaintiffs' First Amended Class Action Complaint.**

190.     As described herein, Defendants failed to disclose the M7 defects to Plaintiffs and the members of the California Subclass in violation of Cal. Civ. Code §§ 1750, *et seq.* Specifically, Defendants violated Cal. Civ. Code §§ 1750 *et seq.* in at least the following ways:

> (a)     In violation of § 1770(a)(5) by representing that M7 tablets have characteristics, uses, and benefits which they do not have, including but not limited to Micro USB-compliant ports and cords, 5.0MP cameras, and 16GB of storage;
>
> (b)     In violation of § 1770(a)(7) by representing that M7 tablets are of a particular standard or quality when they are actually of another; and
>
> (c)     In violation of § 1770(a)(9) by advertising M7s as having, among other things, Micro USB-compliant ports and cords, 5.0MP cameras, and 16GB of storage, with the intent not to sell them as advertised.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 190 of Plaintiffs' First Amended Class Action Complaint.**

191.     Defendants, acting with knowledge, intentionally and unlawfully brought harm

upon Plaintiffs and the California Subclass by omitting from their advertisements, marketing, and documentation any statement that they designed and/or manufactured the M7 tablets with defects that would render them unusable within less than a year, or any statements that M7s did not perform with the specifications as expressly advertised.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 169 of Plaintiffs' First Amended Class Action Complaint.**

192.     Defendants knew that their M7 tablets suffered from inherent defects, were defectively designed and manufactured, would fail prematurely, did not operate at advertised specifications, and were not suitable for their intended use.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 192 of Plaintiffs' First Amended Class Action Complaint.**

193.     Defendants were in a superior position to know the true state of facts about and the existence of the defects found in the M7 tablets, because they were aware of their own design and manufacturing processes, the actual performance specifications, and the coupling and uncoupling forces that would be placed on the M7 tablets through regular and reasonable use.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 193 of Plaintiffs' First Amended Class Action Complaint.**

194.     Plaintiffs and the California Subclass members, on the other hand, could not have reasonably been expected to learn or discover that their M7 tablets contain defects or unexpected performance specifications until they occur.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 194 of Plaintiffs' First Amended Class Action Complaint.**

195.     Defendants, as leading consumer electronics manufacturers, knew that Plaintiffs

and the members of the California Subclass could not reasonably have been expected to learn about or discover the defects or performance limitations before making purchasing decisions.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 195 of Plaintiffs' First Amended Class Action Complaint.**

196.    Further, Defendants were aware of their own design and/or manufacturing defects and actual performance specifications.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 196 of Plaintiffs' First Amended Class Action Complaint.**

197.    As such, Defendants owed Plaintiffs and the California Subclass members a duty to disclose the defect found in the M7 tablets.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 197 of Plaintiffs' First Amended Class Action Complaint.**

198.    By failing to disclose these defects, Defendants have been knowingly and intentionally concealing material facts and have breached the duties owed to Plaintiffs and the members of the California Subclass.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 198 of Plaintiffs' First Amended Class Action Complaint.**

199.    The facts concealed or not disclosed by Defendants to Plaintiffs and the members of the California Subclass are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the M7 tablets. Had Plaintiffs and the other members of the California Subclass known that the M7 tablets were defective and were functionally deficient, they would not have purchased the M7 tablets or, at a minimum, would have paid less for them.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 199 of Plaintiffs' First Amended Class Action Complaint.**

200.     Plaintiffs and the members of the California Subclass reasonably expected that their M7 tablets would be free from defects, would perform as advertised, and would not prematurely fail.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 200 of Plaintiffs' First Amended Class Action Complaint, and on that basis denies them.**

201.     Thus, as a direct and proximate result of Defendants' failure to disclose their design and/or manufacturing defects, Plaintiffs and the California Subclass members were harmed to the extent they paid a premium for M7 tablets, when, had they known of the defects, they would not have purchased their M7 tablets at the prices paid, if at all. Plaintiffs also suffered consequential damages in the form of lost pictures, videos, and their ability to use data stored on the M7 tablets.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 201 of Plaintiffs' First Amended Class Action Complaint.**

202.     Under Cal. Civ. Code § 1780(a) and (b), Plaintiffs, individually and on behalf of the California Subclass, demands that Defendants correct, repair, replace, or otherwise rectify the defective M7 tablets, and further seek an injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, along with costs, reasonable attorneys' fees, and all other appropriate remedies for their violations of the CLRA.

**ANSWER: Defendant ESI admits only that Plaintiffs purport to make the demands described in this paragraph. Defendant ESI denies that Plaintiffs may properly act on**

behalf of the California subclass and denies the remaining allegations contained in

Paragraph 202 of Plaintiffs' First Amended Class Action Complaint.

**COUNT VI**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

203.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth

herein.

**ANSWER:    Defendant ESI incorporates by reference its answers to the foregoing**

**allegations as though fully set forth herein.**

204.    California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200,

*et seq.*, protects both consumers and competitors by promoting fair competition in commercial

markets for goods and services.

**ANSWER:    Defendant ESI has insufficient knowledge to form a belief as to the**

**truth or falsity of the allegations contained in Paragraph 204 of Plaintiffs' First Amended**

**Class Action Complaint.**

205.    The UCL prohibits any unlawful, unfair, or fraudulent business act or practice,

including the employment of any deception, fraud, false pretense, false promise,

misrepresentation, or the concealment, suppression, or omission of any material fact. A business

practice need only meet one of the three criteria to be considered unfair competition.

**ANSWER:    Defendant ESI denies the allegations contained in Paragraph 205 of**

**Plaintiffs' First Amended Class Action Complaint.**

206.    The existence of a material defect in a product is a material term of any

transaction because it directly affects a consumer's choice of, or conduct regarding, whether to

purchase a product.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 206 of Plaintiffs' First Amended Class Action Complaint.**

207.     The technical performance specifications for a product are material terms of any transaction because they directly affect a consumer's choice of, or conduct regarding, whether to purchase a product.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 207 of Plaintiffs' First Amended Class Action Complaint.**

208.     As described herein, Defendants have engaged in deceptive business practices, as defined by the UCL, by failing to disclose that M7 tablets contain material defects that cause premature failure, despite knowing that the M7 tablets contained such defects.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 208 of Plaintiffs' First Amended Class Action Complaint.**

209.     As described herein, Defendants have engaged in deceptive business practices, as defined by the UCL, by advertising M7 tablets as having technical specifications which they do not have and by failing to disclose these performance deficiencies, despite knowing of such deficiencies itself.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 209 of Plaintiffs' First Amended Class Action Complaint.**

210.     Plaintiffs' M7s failed because of Defendants' design and/or manufacturing defects within Defendants' one-year warranty period.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 210 of Plaintiffs' First Amended Class Action Complaint.**

211.     Defendants were in a superior position to know the true state of facts about and the existence of the defects found in the M7 tablets and the actual technical specifications for such tablets because they were aware of their own design and manufacturing processes, as well as the performance capabilities and the coupling and uncoupling forces that would be placed on the M7 tablets through regular and reasonable use. Given the information asymmetry between Defendants and consumers regarding the M7's design, manufacturing process, and operation, Defendants knew or had reason to know that Plaintiffs and the California Subclass could not have reasonably known or discovered the existence of their design and/or manufacturing defects or performance failures.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 211 of Plaintiffs' First Amended Class Action Complaint.**

212.     Accordingly, Plaintiffs and the California Subclass members could not have reasonably been expected to learn or discover that their M7s did not perform as advertised or that their M7 tablets would contain the defects complained of herein until after making their purchasing decisions.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 212 of Plaintiffs' First Amended Class Action Complaint.**

213.     As such, Defendants owed Plaintiffs and the California Subclass members a duty to disclose the defects found in the M7 tablets.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 213 of Plaintiffs' First Amended Class Action Complaint.**

214.     Defendants violated the UCL's unfair prong by causing substantial injury to consumers by failing to disclose the existence of the defects contained in the M7 tablets and by

falsely advertising and failing to disclose the technical product specifications for M7 tablets. The injuries caused by Defendants' unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not have reasonably avoided.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 214 of Plaintiffs' First Amended Class Action Complaint.**

215.     Defendants have also violated the UCL's unlawful prong by violating the CLRA, as described above.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 215 of Plaintiffs' First Amended Class Action Complaint.**

216.     Plaintiffs and members of the California Subclass reasonably expected that their M7 tablets would perform with the advertised product specifications.

**ANSWER: Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in paragraph 216 of Plaintiffs' First Amended Class Action Complaint, and on that basis denies them.**

217.     Defendants' unlawful and unfair conduct occurred during the manufacturing, marketing, and sale of their consumer electronic products, and therefore occurred in the course of Defendants' business practices.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 217 of Plaintiffs' First Amended Class Action Complaint.**

218.     Defendants' unfair and unlawful conduct directly and proximately caused Plaintiffs and the California Subclass a loss of money or property in the form of the premium price paid for their Monster M7s. Plaintiffs also suffered consequential damages in the form of

lost pictures, videos, and their ability to use data stored on the M7 tablets.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 218 of Plaintiffs' First Amended Class Action Complaint.**

219.     But for Defendants' conduct as described herein, Plaintiffs and the California Subclass would not have purchased the Monster M7 tablets, or would have paid substantially less for them.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 219 of Plaintiffs' First Amended Class Action Complaint.**

220.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order (1) requiring Defendants to cease the unfair and unlawful practices described herein; (2) requiring Defendants to restore to Plaintiffs and each California Subclass member any money acquired by means of unfair and/or unlawful competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**ANSWER" Defendant ESI admits only that Plaintiffs purport to seek such an order. Defendant ESI denies that any such order is appropriate and denies any remaining allegations contained in Paragraph 220 of Plaintiffs' First Amended Class Action Complaint.**

## COUNT VII
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Classes)
### (Plead in the Alternative to Counts I-VI)

221.     Plaintiffs incorporate by reference the allegations in paragraphs 1-107 as if fully set forth herein.

**ANSWER:     Defendant ESI incorporates by reference its answers to the foregoing allegations as though fully set forth herein.**

222.     Plaintiff and the members of the Classes conferred monetary benefits on Defendants in the form of monies paid to purchase M7 tablets.

**ANSWER:     Defendant ESI denies the allegations contained in Paragraph 222 of Plaintiffs' First Amended Class Action Complaint.**

223.     Defendants appreciate or have knowledge of the benefits conferred upon them by Plaintiffs and the Classes.

**ANSWER:     Defendant ESI denies the allegations contained in Paragraph 223 of Plaintiffs' First Amended Class Action Complaint.**

224.     Under principles of equity and good conscience, Defendants should not be permitted to retain the M7 purchase monies paid by Plaintiffs and the Classes because Defendants concealed material information regarding the defects contained within each M7 tablet (*i.e.*, that such tablets were substantially certain to fail within less than a year, and that they would suffer from other defects and would otherwise fail to operate at their advertised specifications), which directly resulted in the unjust loss of monies and Plaintiffs' ability to use data stored on the M7 tablets, such as, *inter alia* videos, pictures, and data.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 224 of Plaintiffs' First Amended Class Action Complaint.**

225.     Defendants had a duty to disclose information about the material defects within each M7 tablet, but failed to do so.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 225 of Plaintiffs' First Amended Class Action Complaint.**

226.     Had Defendants disclosed information about the material defects within each M7 tablet, Plaintiffs and the members of the Classes would not have purchased their tablets at the

prices paid, if at all.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 226 of Plaintiffs' First Amended Class Action Complaint.**

227. As a result of Defendants' conduct, Plaintiffs and the Classes suffered damages in the form of the monies paid to purchase Defendants' M7 tablet computers.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 227 of Plaintiffs' First Amended Class Action Complaint.**

228. Plaintiffs and the Classes seek restitution of all monies Defendants have unjustly received as a result of their misconduct alleged herein, as well as interest, reasonable attorneys' fees, expenses, and costs to the extent allowable, as well as all other relief the Court deems appropriate to make them whole.

**ANSWER: Defendant ESI admits only that Plaintiffs purport to seek the relief described in this paragraph. Defendant ESI denies that the relief described is proper, denies that Plaintiffs may properly act on behalf of any putative class, and denies the remaining allegations contained in Paragraph 228 of Plaintiffs' First Amended Class Action Complaint.**

## COUNT VIII

**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS § 505/1, *et seq.***
**(Plaintiff Edward Baez, Individually and on behalf of the Illinois Subclass)**
**(Plead in the Alternative to Counts I-VII)**

229. Plaintiff incorporates by reference the allegations in paragraphs 1-107 as if fully set forth herein.

**ANSWER: Defendant ESI incorporates by reference its answers to paragraphs 1-**

**107 as though fully set forth herein.**

230.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (815 ILCS 505/1, *et seq*.) protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

**ANSWER:    Defendant ESI has insufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 230 of Plaintiffs' First Amended Class Action Complaint.**

231.    The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 231 of Plaintiffs' First Amended Class Action Complaint.**

232.    The ICFA applies to Defendants' actions and conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

**ANSWER:    Defendant ESI denies the allegations contained in Paragraph 232 of Plaintiffs' First Amended Class Action Complaint.**

233.    Defendants are "persons" as defined under section 505/1(c) of the ICFA.

**ANSWER:    Defendant ESI admits the allegations contained in Paragraph 233 of Plaintiffs' First Amended Class Action Complaint.**

234.    Plaintiff Baez and each member of the Illinois Subclass are "consumers" as defined under 505/1(e) of the ICFA.

**ANSWER:    Defendant ESI has insufficient knowledge to form a belief as to the**

truth or falsity of the allegations contained in Paragraph 234 of Plaintiffs' First Amended Class Action Complaint.**

235.     Defendants' Monster M7 tablets are "merchandise" within the meaning of section 505/1(b) and their sale is considered "trade" or "commerce" under the ICFA.

**ANSWER:     Defendant ESI admits that M7 tablets meet the definition of "merchandise" contained in the ICFA and denies the remaining allegations contained in Paragraph 235 of Plaintiffs' First Amended Class Action Complaint.**

236.     As described herein, Defendants have engaged in unfair or deceptive acts or practices and unfair methods of competition as defined by 505/2 of the ICFA *et seq.*, and 510/2 of the Uniform Deceptive Trade Practices Act, to the detriment of Plaintiff Baez and the Illinois Subclass.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 236 of Plaintiffs' First Amended Class Action Complaint.**

237.     Defendants used or employed deception, fraud, false pretense, concealment, suppression, and/or omission of material facts with the intent to induce reliance.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 237 of Plaintiffs' First Amended Class Action Complaint.**

238.     With the intent to induce reliance, Defendants purposefully advertise that M7 tablets are high-quality, functioning tablet computers that are compliant with Micro USB standards, take 5.0MP pictures, and have 16GB of usable storage, all while concealing, suppressing, and/or omitting the material facts that M7 tablets are designed and manufactured with defects that prevent them from taking 5.0MP pictures or providing 16GB of usable storage and that make them substantially certain to fail within the one-year warranty period.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 238 of Plaintiffs' First Amended Class Action Complaint.**

239.    These facts are material because they are likely to influence a consumer's decision of whether or not to purchase one of Defendants' M7 tablets.

**ANSWER:    Defendant ESI denies the allegations contained in Paragraph 239 of Plaintiffs' First Amended Class Action Complaint.**

240.    Defendants intended that Plaintiff Baez and the Illinois Subclass would rely on their deceptive conduct and agree to purchase M7 tablets.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 240 of Plaintiffs' First Amended Class Action Complaint.**

241.    Plaintiff Baez and the Illinois Subclass relied upon Defendants' deceptive conduct, were deceived and/or mislead by Defendants' deception, fraud, and omission of material facts, and suffered harm in the form of the monies they paid for M7 tablets. Plaintiff Baez and the Illinois Subclass also suffered consequential damages in the form of lost pictures, videos, and their ability to use data stored on the M7 tablets.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 241 of Plaintiffs' First Amended Class Action Complaint.**

242.    Defendants' conduct is also unfair, oppressive, immoral, and unscrupulous. Due to information asymmetries, Plaintiff Baez and the members of the Illinois Subclass could not reasonably have been expected to discover the nature and extent of the design and manufacturing defects present in each M7 tablet prior to making their purchases, nor could they have anticipated the lack of warranty service that would be made available to them.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 242 of**

Plaintiffs' First Amended Class Action Complaint.

243.     As a direct and proximate result of the immoral, unscrupulous, and oppressive conduct, Plaintiff Baez and the other Illinois Subclass members suffered actual damages, since if they had known of the defects concealed within each M7, they would not have paid as much for their tablets, if they bought them at all.

**ANSWER: Defendant ESI denies the allegations contained in Paragraph 243 of Plaintiffs' First Amended Class Action Complaint.**

244.     Under 815 ILCS 505/10a, Plaintiff seeks an order (1) requiring Defendants to cease the unfair practices described herein; (2) requiring Defendants to restore to Plaintiff Baez and each Illinois Subclass member any money acquired by means of unfair competition (restitution); and (3) ordering Defendants to compensate Plaintiff Baez and the Illinois Subclass for any consequential damages resulting from their unfair and deceptive acts, and (4) awarding reasonable costs and attorneys' fees pursuant to 815 ILCS 505/10a.

**ANSWER: Defendant ESI admits only that Plaintiff purports to seek the order described in this paragraph. Defendant ESI denies that any such order is proper and denies the remaining allegations contained in Paragraph 169 of Plaintiffs' First Amended Class Action Complaint.**

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant, E & S INTERNATIONAL ENTERPISES, INC., respectfully requests that judgment be entered in its favor and against Plaintiffs with costs assessed against Plaintiffs.

**AFFIRMATIVE DEFENSES**

**NOW COMES** Defendant, E & S INTERNATIONAL ENTERPRISES, INC., and for its

Affirmative Defenses to Plaintiffs' First Amended Class Action Complaint, states as follows:

**FIRST AFFIRMATIVE DEFENSE**
**(Satisfaction – Plaintiff Grays)**

The claims brought by Plaintiff Grays are barred because they have been satisfied in full

and/or by accord and satisfaction. According to Better Business Bureau Records, Plaintiffs Grays

stated on February 21, 2016, that "I only want them to refund my total amount of the tablet

because I no longer want their product and would like to put this matter behind me." Three days

later, ESI issued and sent to Grays a refund check in the amount of $100.19, reflecting the total

amount Grays paid to purchase her M7 tablet. Accordingly, Grays' claim against Defendants has

been satisfied and she is barred from bringing this lawsuit as a result.

**SECOND AFFIRMATIVE DEFENSE**
**(Satisfaction – Plaintiff Baez)**

The claims brought by Plaintiff Baez are barred because they have been satisfied in full

and/or by accord and satisfaction. In February 2016, Plaintiff Baez accepted tender from

Defendant ESI of a replacement tablet and additional Bluetooth speaker package. Accordingly,

Baez's claim against Defendants has been satisfied and he is barred from bringing this lawsuit as

a result.

**THIRD AFFIRMATIVE DEFENSE**
**(Disclaimer of Warranty)**

The plain text of the warranty provided with the M7 Tablet purchased by both Plaintiffs

explicitly states: "THERE ARE NO EXPRESS OR IMPLIED AWARRANTIES OTHER THAN

THOSE LISTED AND DESCRIBED ABOVE, AND NO WARRANTIES WHETHER

EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE, SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE." This language effectively disclaims the purported warranties cited by Plaintiffs in Counts I, III, and IV, and bars those counts as a result.

### FOURTH AFFIRMATIVE DEFENSE
### (Misuse of Product – Plaintiff Baez)

The claims brought by Plaintiff Baez in Counts I-IV are barred because his allegedly defective tablet demonstrates customer misuse that rendered any and all warranties inapplicable. The claims of certain members of the putative classes may be similarly barred.

### FIFTH AFFIRMATIVE DEFENSE
### (Lack of Privity – Counts I-IV)

Plaintiffs and the members of the putative class did not enter into any contractual agreement with Defendant ESI, nor did they purchase any goods or merchandise directly from Defendant ESI. Plaintiffs and the putative classes therefore lack the privity necessary to enforce any alleged contracts, and their warranty claims (Counts I-IV) are barred.

### SIXTH AFFIRMATIVE DEFENSE
### (Failure to Give Notice)

Plaintiffs and certain members of the putative class failed to provide adequate notice of their allegations that the M7 tablet was defective or provide Defendant ESI an opportunity to rectify the alleged defects prior to filing this lawsuit. All claims requiring prior notice as a condition of recovery are accordingly barred, including but not limited to all warranty claims (Counts I-IV) and claims under California's Consumer Legal Remedies Act (Count V).

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Timely Assert Warranty Claim – Counts I-IV)

The plain text of the Limited Warranty provided with the M7 tablet – the sole and exclusive applicable warranty – explicitly stated that the warranty was "for a period of one (1) year." Any putative class member who did not submit a warranty claim within one year of purchase is therefore barred from bringing a warranty claim now.

## EIGHTH AFFIRMATIVE DEFENSE
### (Limitation on Remedies – Counts I-IV)

The plain text of the Limited Warranty provided with the M7 tablet – the sole and exclusive applicable warranty – explicitly stated that "REPAIR OR REPLACEMENT AS PROVIDED UNDER THIS LIMITED WARRANTY IS THE EXCLUSIVE REMEDY OF THE CONSUMER." Claims brought by plaintiffs or the putative class for any other remedy are barred as a result.

## NINTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiffs and certain members of the putative class waived their right to bring this lawsuit by failing to provide adequate notice of their allegations that the M7 tablet was defective or provide Defendant Monster an opportunity to rectify the alleged defects prior to filing this lawsuit, or through other actions constituting waiver of the right to sue. All waivable claims are accordingly barred.

## TENTH AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiffs' Complaint, and each and every claim for relief set forth therein, is barred by application of the equitable doctrine of estoppel due to certain conduct of the plaintiffs and members of the putative class and/or certain representations made by the plaintiffs and other members of the putative class.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

Plaintiffs or members of the putative class have failed to mitigate or attempt to mitigate damages, if in fact any damages have been or will be sustained, and any recovery by Plaintiffs or the putative class must be diminished or barred by reason thereof.

## TWELFTH AFFIRMATIVE DEFENSE
### (Good Faith)

Plaintiffs' Complaint, and each cause of action alleged there in, is barred in that Defendant ESI has at all times acted in good faith and without malice toward Plaintiffs and in accordance with applicable law.

**WHEREFORE**, Defendant, E & S INTERNATIONAL ENTERPISES, INC., respectfully requests that judgment be entered in its favor and against Plaintiffs with costs assessed against Plaintiffs.

## DEMAND FOR JURY TRIAL

Defendant demands a trial by jury for all issues so triable.

Respectfully submitted,

By: ___/s/ Eric L. Samore_____
        Counsel for Defendants

Eric L. Samore ARDC #6181345
Albert M. Bower ARDC # 6277162
Ronald D. Balfour ARDC #6307658
SmithAmundsen, LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on **January 17, 2017**, he caused the **Answer and Affirmative Defenses to First Amended Class Action Complaint of Defendant E & S International Enterprises, Inc.** to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record at their email addresses on file with the Court.

[x]    Pursuant to 28 USC Section 1746(2), I certify under penalty of perjury that the foregoing is true and correct.  Executed on January 17, 2017

/s/ Eric L. Samore